This is a suit in which plaintiff, a produce dealer, seeks to recover damages in the sum of $764.05 for the spoilage of a shipment of produce which was hauled by one of defendant's trucks from Plant City, Florida, to Monroe, Louisiana. Writs of attachment were sued out by plaintiff under which defendant's truck was seized in the jurisdiction of the First District Court of Caddo Parish. Defendant, in answer, denied any liability for the spoilage of the produce and by way of reconvention sought judgment in the sum of $1,013 to cover freight charges in the sum of $318, additional freight charges in the sum of $75, covering transportation of a portion of the load of produce from Monroe to Shreveport, and alleged damages by reason of the illegal issuance of the writ of attachment in a total sum of $620.
After trial there was judgment rejecting plaintiff's demands, and further judgment in favor of defendant on his reconventional demand in a total sum of $543, from which judgment plaintiff has brought this appeal.
The facts show that on Friday, May 31, 1946, plaintiff purchased 636 assorted cases of vegetables. The purchase was made at the Farmers Market at Plan City, Florida, by plaintiff's agent, one Paul Long, a produce buyer or broker. On the same date, Long acting for and on behalf of plaintiff, engaged one of defendant's trucks and contracted for the hauling of the produce in question from Plant City, Florida, to Monroe, Louisiana, at a freight charge of 50 cents per case.
The produce was loaded on defendant's truck by Long's crew, the operation of loading being completed about 7:00 o'clock of the evening of May 31st, and the truck in charge of defendant's driver, Edward Ryan, began its journey to Monroe about 7:30 p.m.
The truck arrived in Monroe about 9:15 p.m. on Sunday, June 2nd, and was met *Page 875 
by plaintiff, who had been awaiting its arrival. Plaintiff had released his loading crew a short while before the arrival of the truck, and it was necessary that the produce remain in the truck until the loading crew reported for work at about 8:00 o'clock the next morning.
In the process of unloading it was discovered that the majority of the produce was spoiled, and it was necessary to sort and regrade all of the produce, which was then disposed of by plaintiff at a substantial loss to him. Plaintiff engaged defendant's truck to transport a small portion of the load of produce from Monroe to Shreveport, where it was delivered in accordance with his directions. Plaintiff then filed this suit and seized the truck of defendant within the jurisdiction of the District Court of Caddo Parish under writs of attachment based upon an allegation of the non-residence of defendant.
The above facts are undisputed. With reference to other facts involved there is a considerable conflict in the testimony of the witnesses which will be hereafter discussed in some detail.
Plaintiff based his claim to recovery on the grounds that the produce was in good condition at the time it was loaded on defendant's truck in Plant City, Florida; that the produce was delivered in Monroe in a badly deteriorated condition, and that the spoilage of the produce was due to the lack of proper refrigeration of defendant's truck, and, broadly, the "negligence of defendant".
[1] As to the spoilage of a considerable portion of the produce, there can be no question, since the testimony in the record conclusively establishes the fact that the badly deteriorated condition of the produce was noticeable immediately upon the beginning of the unloading operations at or about 8:00 o'clock Monday morning, June 3rd. If plaintiff, by a preponderance of the evidence, had succeeded in establishing the good condition of the produce at the time it was loaded on defendant's truck at Plant City, Florida, for transportation to Monroe, unquestionably, he would be entitled to recover, unless defendant proved that the deterioration was not due to his negligence, which is presumptively established in such instances, but to some unforeseen event or circumstance beyond his control.
Our learned brother of the district court held that plaintiff had failed to establish the good condition of the produce at the time it was loaded for shipment, or any negligence on the part of defendant which would justify recovery. With this finding we are in accord.
Plaintiff relied largely upon the testimony of his broker, Long, and of the broker's wife, who was his office assistant, in attempting to establish the good condition of the produce. It appears clear to us that Long spent almost the entire day of May 31st in purchasing the produce for plaintiff's account, and Long himself acknowledged that part of the produce in question was gathered late in the evening before and part was gathered early in the morning of the 31st.
It is established that the produce sat on the loading platform at Plant City throughout the day of the 31st and that the actual process of loading was not completed until about 7:00 o'clock in the evening. It was further established by means of the testimony of defendant's witness, R.E. Johnson, the master of the Plant City Market, that the vegetable season in that vicinity closed on June 5th and that produce gathered toward the end of the season, as was the fact in this instance, was not of prime quality, and tended to weaken and deteriorate. According to his testimony even extreme care in refrigeration would not avail to prevent the weakening or deterioration of this produce under the conditions given. It is undisputed that from the time the produce was picked or gathered late in the afternoon before or early in the morning of the day it was purchased and shipped, it was packed in hampers which were closed and wired and was without any character of refrigeration.
The testimony of Long, an expert produce buyer, and of Mrs. Long, who, while not an expert, was of more than average skill in judging the condition of vegetables, was to the effect that the produce *Page 876 
was in good condition when bought and loaded. But, it is apparent from the testimony of these witnesses that their inspection was a "spot" inspection and was confined to a rather cursory examination of a very small number of the hampers of produce. This examination was made simply by removing the wires, lifting the top and looking at the vegetables, and neither witness was able to fix with any certainty the time of such inspections nor the particular lots of vegetables which were subjected to even this casual nature of examination. The witnesses themselves show that they were confused and uncertain, and their testimony is marked by discrepancies and contradictions which materially detract from the weight which might otherwise be attached thereto.
[2] Careful consideration of the testimony of all witnesses bearing on this point convinces us that the plaintiff has failed to discharge, by a preponderance of the evidence, the burden which rested upon him to show the good condition of the produce at the time of shipment.
[3, 4] While this conclusion is sufficient to dispose of this case, we are further of the opinion that plaintiff has failed to establish any negligence on the part of defendant. It is true that plaintiff alleged and attempted to prove that the refrigerator truck of the defendant was not properly equipped and that the failure of refrigeration was responsible for the spoilage of the produce, but he has not sustained these claims. On the contrary, it is definitely established that plaintiff's agent, Long, selected the truck, was present at least for a brief period during the loading operation, and voiced no objection to the character of truck which was being employed for the purpose at hand. And, while there is some indication in the testimony that the produce was improperly packed in the truck, which circumstance may have contributed to its deterioration, it is clear that the truck was loaded by and under the direction of a crew employed by plaintiff's agent, Long, and that neither defendant nor any agent nor employee of his took any part in this operation.
It is also established, without any serious attempt on the part of plaintiff by way of rebuttal, that the driver of defendant's truck maintained sufficient ice during the course of his trip to provide proper refrigeration, and at the time of the arrival of the truck in Monroe and an examination made by plaintiff of the ice in the bunkers at that time, there was sufficient ice for the protection of the produce.
We find no evidence which would support any finding of negligence on the part of defendant.
There are other facts in connection with the case which we regard as significant. It is shown that plaintiff made no complaint to defendant's driver nor to defendant, with whom he engaged in at least one telephone conversation during the course of unloading the produce, until after the arrival of the truck in Shreveport. It appears that plaintiff engaged the truck to transport a part of the deteriorated produce from Monroe to Shreveport. Further than this it is shown that plaintiff negotiated with defendant's driver, and through him with defendant, himself, with reference to engaging the truck for another trip, all of which was done, according to plaintiff's own testimony, after he discovered that the produce was spoiled. Certainly this course of action is inconsistent with plaintiff's claims of negligence against the defendant based upon the improper type of truck and failure of the refrigerating equipment.
[5] This case involves questions of facts only and, as we have many times before pointed out, it is necessary that manifest error be evident in a lower court's resolution of questions of fact in order to justify reversal by an appellate tribunal. We find no such error in this case, and, on the contrary, the record abundantly supports the conclusions reached by the learned judge of the district court.
[6] With respect to the reconventional demand, the judgment of the lower court was based upon an allowance to defendant of $318 on the basis of freight charges, the correctness of which was admitted. *Page 877 
In addition the court allowed $75 for the trip from Monroe to Shreveport, upon which point plaintiff offered no evidence. The balance of the judgment in favor of defendant on the reconventional demand was made up of an allowance of $150 in the nature of damages for the detention of the truck, which was in the custody of the court, under the attachment, for two days before being released on bond. The court called attention to the fact that defendant had claimed $100 per day and that his estimate was neither objected to nor refuted by plaintiff. However, on the basis of the charge made for the trip from Monroe to Shreveport, the court arrived at the allowance of $150 on this item. Defendant makes no complaint of the amount of the judgment under the reconventional claim, and we feel that the basis of computation and the allowance made is fully justified by the facts.
For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.
KENNON, J., dissents, with reasons.
KENNON, Judge, dissents, being of the opinion that the plaintiff has proven that the produce was in sound condition when delivered and that it was spoiled upon reaching its destination. He is therefore entitled to recover. Article 2754, Revised Civil Code.